**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**MIA CHEL P. WOULLARD,**

       **Plaintiff,**

**vs.**                            **Case No. 5:03cv298-RS/WCS**

**HANSFORT T. JOHNSON,
Acting Secretary of the Navy,**

       **Defendant.**

_____/

**REPORT AND RECOMMENDATION**

This is a suit brought pursuant to Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e-5, et seq.  Doc. 21 (third amended complaint).  Plaintiff, who represents

himself, asserts in this composite document that on May 15, 1998,  he was denied

promotion to the position of Sergeant GS-6 due to his race (African-American), color,

age, gender (male), and religion (Judaism).[1]  _Id._  Defendant, who is sued in his official

capacity, has filed a motion for summary judgment with exhibits and a statement of

_____

[1] The age claim appears in the first part of the complaint and the gender claim
appears in the second.  The Formal Complaint presented to the Navy as the first step of
the administrative process (a copy is in the middle of document 21) only mentions race.

material facts as to which there is alleged to be no dispute.  Docs. 34 and 35.  The

motion addresses the claims of discrimination due to race, religion, and age, but not

gender.  Plaintiff was advised as to his responsibilities with regard to coming forward

with evidence in opposition to this motion, doc. 38, and he has filed a response.  Doc.

42.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendant initially has the burden to

demonstrate an absence of evidence to support the nonmoving party's case.  Celotex

Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S.CT. 2548, 2553-54, 91 L.Ed.2d 265

(1986).  If he does so, the burden shifts to the Plaintiff to come forward with evidentiary

material demonstrating a genuine issue of material fact for trial.  *Id.*  Plaintiff must show

more than the existence of a "metaphysical doubt" regarding the material facts,

Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586,

106 S.CT. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence is

insufficient.  There must be such evidence that a jury could reasonably return a verdict

for the party bearing the burden of proof.  Anderson v. Liberty Lobby, 477 U.S. 242,

251, 106 S.CT. 2505, 2512, 91 L.Ed.2d 202 (1986).  An issue of fact is "material" if it

could affect the outcome of the case.  Hickson Corp. v. Northern Crossarm Co., Inc.,

357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  However, "the evidence and

inferences drawn from the evidence are viewed in the light most favorable to the

nonmoving party, and all reasonable doubts are resolved in his favor."  WSB-TV v. Lee,

842 F.2d 1266, 1270 (11th Cir. 1988); Watkins v. Ford Motor Co., 190 F.3d 1213, 1216

(11th Cir. 1999) ("We are required to resolve all reasonable inferences and facts in a light most favorable to the nonmoving party.").

Local Rule 56.1(A) provides that a motion for summary judgment "shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.  Failure to submit such a statement constitutes grounds for denial of the motion."  The Rule also provides that the statement "shall reference the appropriate deposition, affidavit, interrogatory, admission, or other source of the relied upon material fact, by page, paragraph, number, or other detail sufficient to permit the court to readily locate and check the source."  The Rule provides that the party opposing the motion shall serve a similar statement of material facts as to which the party contends there is a genuine issue to be tried, using the same format.  Finally, Rule 56.1(A) provides that the movant's properly filed statement of undisputed facts will be deemed to be admitted unless controverted by the opposing party in the manner specified by the Rule.  *See* Jones v. Gerwens, 874 F.2d 1534, 1537 n. 3 (11th Cir. 1989) (determining that plaintiff's failure to controvert defendants' statement of undisputed facts filed in compliance with a similar local rule of the Southern District of Florida constituted an admission that such facts were not disputed for summary judgment purposes.)

**Material facts that are not in dispute**

Defendant presented a Statement of Facts as required by Local Rule 56.1(A).  Plaintiff did not submit a Statement of Facts as instructed.  Docs. 38 (order of instructions) and 42 (Plaintiff's response).  Plaintiff argues in his response that he has evidence to dispute the evidence presented during the administrative proceedings, but

he has not come forward with that evidence as instructed.  Thus, the facts set forth by Defendant are undisputed.

The undisputed facts that follow are almost verbatim from document 35.  The assertions of material fact are supported by the exhibits cited.  Additional and clarified undisputed facts are set forth in footnotes or in brackets:

1.  In the spring of 1998, the Plaintiff, an African-American, was employed by the United States Department of Navy as a civilian police officer, GS-0083-05, stationed at the Department's Coastal Systems Station, Panama City, Florida.

2.  In 1998, the Coastal Systems Station announced a vacancy as a lead police officer, GS-0083-05, opening for applications on May 1, 1998. The date to file applications closed on May 7, 1998. The vacancy announcement listed both prerequisite qualifications and "job elements" which were to be addressed by any applicant in the application.  Vacancy Announcement CP231-98-20, exhibit 1.[2]

3.  The plaintiff applied for the position.  Of all the applications, three individuals were found qualified, Gary Houchens, Caucasian, who later withdrew his application, K, Tillman, Caucasian, and the Plaintiff.[3]  See applications, exhibits 2a and 2b.

4.  The selection process to fill the announced vacancy was that all qualified applicants were reviewed by a panel of individuals, including the senior lieutenants and the Director of Security and Safety, Coastal Systems Station.  After this review, the

---

[2] The exhibits were attached to document 34, but were not scanned into the electronic docket.  The paper exhibits are a part of this file.

[3] The races of the three candidates is shown on exhibit 5.  The applications, exhibits 2a and 2b, show that both Tillman and Plaintiff are male.  The applications state that Plaintiff was born on November 30, 1952, and Tillman was born on March 7, 1972.

panel provided their recommendations to the Chief of Police who then made the selection.  Exhibit 3, testimony of Nancy Everritt dated March 1, 2000, page 74.

5.  The panel consisted of five officers; Director Everett, Caucasian, Lieutenant Jose Wys, Hispanic, Lieutenant Harold Harris, [Caucasian],[4] and Officers Watkins, African-American, and Steve Martin, Caucasian.[5]  In addition, the Chief of Police, a Caucasian, also ranked the candidates.  The consensus of the panel was that Officer Tillman was better qualified, with which the Chief of Police agreed.  See composite exhibit 4, memorandum dated June 8, 1998[,] and statements of panel members.

6.  An analysis of the racial composite of the Coastal Systems Station police office in 1998 reveals that of the 16 police officers assigned to that office, four are African-American (25%), two are Hispanic (12.5%) and the remainder [ten] are Caucasian (63.5%) [actually 62.5%].  On the seven supervisory/lead positions, two are African-American (28.6%), two are Hispanic (28.6%) and three are Caucasian (42.8%).  See Security Office Workforce racial profile, exhibit 5.  Of the three lieutenant positions available on the force, one is white, one is Hispanic, and one is African-American.  *Id.* Of the three sergeant positions, two are white and one is African-American.  See Exhibit 3, exhibit 2, page 73.

7.  Lieutenant Harris, a Caucasian, saw no evidence of racial discrimination and nothing that suggested that the Chief of Police based his conduct on anything other than merit.  See testimony dated March 6, 2000, exhibit 6, pages 38-39, 41.

---

[4] Defendant represents that Harris is African-American in paragraph 5 of the Statement of Facts, but he is shown as being Caucasian on exhibit 5.  See paragraph 7 of the Statement of Facts.

[5] The races of the selection panel members are shown on exhibit 5.

8.   Sergeant Long, an African-American, believed that while it was "wrong"" to select a person with less time in Civil Service than a person with more, he could not say that there was anything improper in the selection process.  See testimony dated March 6, 2000, exhibit 7, pages 43, 44-45, 46-47.

9.   Sergeant Long competed with the Plaintiff for an earlier position but Sergeant Long was selected.  See exhibit 7, pages 50.

10.   A comparison of Mr. Tillman's application with the Plaintiff's effective as of the vacancy demonstrates the following employment record:

Mia Chel Woullard

     4/97-5/98 - Department of Defense/Navy (DOD) police officer
     5/83-4/97 - Security guard/Patrolman[/boat captain/police officer][6]
     1981-1985 - Part time federal game warden
     10/82-5/83 - recreational assistant
     [12/82-5/83][7] - Escort Security Officer
     [11/81-9/82 - Safety Service Officer/Police Officer][8]

 Kenneth Tillman

     11/96-5/98 - DOD police officer
     5/96-11/96 - Boot Camp Drill Instructor
     1/96-5/96 - privately employed security guard
     1/92-1/96 - Military Police Officer

See exhibits 2a and 2b.

---

[6] With respect to this job, Plaintiff states his position was "converted to Police Officer in July 1995."  Exhibit 2a, p. 59.  The job is described as "Guard" or "Security Guard" for the years from 1983 to 1995.

[7] The dates on exhibit 2a do not support the assertion in the Statement of Facts that this job lasted from 11/81-9/82.

[8] This security officer job was omitted from the Statement of Facts.  See exhibit 2a, page 70.

11.  Officer Tillman actually had more experience as a police officer.[9]  Compare Exhibits 2a and 2b.

12.  The applications show that while both possessed state law enforcement certifications, Officer Tillman trained for over 400 hours at the State's police Academy and graduated first in his class whereas the Plaintiff was "grandfathered" in because of his federal law enforcement training.  Compare Exhibits 2a and 2b.  [Additionally, Tillman graduated first in his class at the Florida State Police Academy.  Exhibit 2b, p. 51.  However, Plaintiff had 525 hours of training by the Department of Treasury, Federal Law Enforcement Training Center in Glynco, Georgia, and 400 hours of training by the Charleston County Police Department.  Exhibit 2a, p. 80.]

13.  Officer Tillman also had experience as a supervisor in that he served as a corporal in previous employment [as a Corporal in the Military Police.  [However, Tillman was not promoted to Corporal until September, 1995, and he left the military police in January, 1996, so this supervisory experience was only of four months duration].  See exhibit 2b[, p. 46].

14.  Officer Tillman was three months shy of his Associates Degree in Criminal Justice.  See exhibit 2b[, p. 47].[10]  The position announcement recognized that college education was an "enhancement."  See exhibit 1.

---

[9] Tillman had 4 years experience as a Military Police Officer and 1.5 years as a DOD Police Officer, a total of 5.5 years of police officer experience.  Plaintiff had 1 year experience as a DOD Police Officer and a bit less than 2 years (July, 1995, to April, 1997) as Policeman in his earlier job, a total of about 3 years of police officer experience.  See footnote 6.

[10] Tillman had 48 credit hours toward an AA degree from Gulf Coast Community College, and expected to graduate in August, 1998, which was three months away from the date of his application, in May, 1998.  Exhibit 2b, p. 47.

15.  The Plaintiff filed a complaint on August 18, 1998.  In that complaint, he did not raise any issue of religion or age [or gender].[11]  These issues were not raised at any time throughout the Plaintiff's administrative complaint.  See Investigative file, exhibit 8, Plaintiff's rebuttal to Management's response dated August 5, 1998, exhibit 9.

16.  The issues of religion and age were not raised before the United States Equal Opportunity Commission when it issued its final agency order in this case.  See Findings of Fact and Conclusions of Law, exhibit 10, page 3.  [The only issue identified as an issue before the Commission was discrimination due to race.  *Id.*]

**Legal analysis**

### Title VII claims based upon gender and religion

These claims were not alleged in Plaintiff's Formal Complaint, which initiated the administrative process.  Nor were claims of discrimination due to gender or religious affiliation litigated before the Equal Employment Opportunity Commission.

Filing an administrative claim of discrimination with the EEOC is a condition precedent to filing suit in this Court under Title VII.  Maynard v. Pneumatic Product Corp., 256 F.3d 1259, 1262 (11th Cir. 2001), citing 42 U.S.C. § 2000e-5(e); Lyons v. England, 307 F.3d 1092, 1103 (9th Cir. 2002) (Navy employee).  "A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  Mulhall v. Advance Sec. Inc., 19 F.3d 586, 589 n. 8 (11th Cir.), *cert. denied*, 513 U.S. 919 (1994), citing Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir.1970).  However, "the scope of the EEOC

---

[11] This Formal Complaint is attached to the amended complaint and can be found as pages 4-6 of document 21 on the electronic docket.  The only box checked on this complaint is discrimination due to race.  *Id.*, p. 5 (page 2 of the complaint).

complaint should not be strictly interpreted."  Sanchez, 431 F.2d at 465, quoting Baxter

v. Savannah Sugar Refining Corp., 46 F.R.D. 56, 59 (S.D. Ga. 1968).  "[T]he specific

words of the charge of discrimination need not presage with literary exactitude the

judicial pleadings which may follow."  Id.  "The suit may include allegations of

discrimination *reasonably related* to the allegations listed in the administrative charge,

including new acts occurring during the pendency of the administrative charge."

Aramburu v. Boeing Co., 112 F.3d 1398, 1409 (10th Cir. 1997) (emphasis added);

Turner v. Orr, 804 F.2d 1223, 1226-1227 (11th Cir. 1986).

        In Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir.1970), the court

permitted a suit based upon national origin when the claimant only checked the box

indicating discrimination due to "sex" on her EEOC charge.  431 F.2d at 461.  The

plaintiff in that case, however, unlike the case at bar, had sought to amend the

administrative charge to add a claim of national origin after the time for filing a charge

had expired.

        Mulhall held that a claim of unequal pay is not the equivalent of a claim alleging a

failure to promote, and therefore a claim of failure to promote was not within the scope

of a charge alleging only unequal pay.  19 F.3d at 589 n. 8.  *Accord* Chambers v.

American Trans Air Inc., 17 F.3d 998, (7th Cir.), *cert. denied*, 513 U.S. 1001 (1994)

(failure to promote claim is outside the scope of an equal pay claim).  *See also* James v.

United States, 888 F.Supp. 944, 948 (S.D. Ind. 1995) (claim of sex discrimination are

not reasonably related to claim of handicap discrimination).

        In Chanda v. Engelhard/ICC, 234 F.3d 1219 (11th Cir. 2000), the plaintiff had

alleged disability discrimination and "retaliation" because "I complained about

discrimination."  234 F.3d at 1224.  Since the EEOC charge did not make any reference to discrimination due to national origin, the court held that the plaintiff could not bring a claim of retaliation due to national origin in district court.  *Id.*, at 1225.

In contrast, in Gregory v. Georgia Department of Human Resources, 355 F.3d 1277 (11th Cir. 2004), the court permitted a retaliation claim to proceed, even though a retaliation claim had not been alleged in the EEOC charge.  The court reasoned that since the claimant had complained of termination due to race and sex, a claim of retaliation for complaining of race and sex discrimination "was inextricably intertwined with [plaintiff's] complaints of race and sex discrimination."  *Id.*, at 1280.

Mulhall and Chanda govern here, not Sanchez or Gregory.  Unlike the claimant in Sanchez, at no point in the administrative process did Plaintiff mention gender or religion.  He did not seek to amend his Formal Complaint to add claims based upon gender or religion.  The focus of the administrative proceedings was to evaluate Plaintiff's claim of race-based discrimination.  Unlike Gregory, a claim of discrimination due to gender or religion could not be said to have been intertwined with the claim of racial discrimination.  Therefore, the gender and religion claims should be dismissed.

**ADEA claim of age discrimination**

The EEOC has authority to provide a remedy to a federal employee under the Age Discrimination in Employment Act (ADEA).  29 U.S.C. § 633a(a) and (b).  However,

> the ADEA provides two alternative routes for pursuing a claim of age discrimination.  An individual may invoke the EEOC's administrative process and then file a civil action in federal district court if he is not satisfied with his administrative remedies.  A federal employee complaining of age discrimination, however, does not have to seek relief from the employing agency or the EEOC at all.  He can decide to present the merits of his claim to a federal court in the first instance.

Stevens v. Department of the Treasury, 500 U.S. 1, 5-6, 111 S.CT. 1562, 1566, 114 L.Ed.2d 1 (1991).

If the EEOC process is invoked (alternative one), section 626(d) of the ADEA provides that no civil action may commence "until 60 days after a charge alleging unlawful discrimination has been filed" with the EEOC.  29 U.S.C. § 626(d).  Plaintiff did not claim age discrimination in his Formal Complaint and age discrimination was not the subject of the EEOC proceedings.  For the reasons discussed above, Plaintiff cannot proceed with this civil suit with respect to a claim for age discrimination by means of the first alternative.

The second alternative permits suit directly in this Court.  However, as noted in the Stevens case, section 633a(d) of the ADEA provides:

> When the individual has not filed a complaint concerning age discrimination with the [EEOC], no civil action may be commenced by any individual under this section until the individual has given the Commission not less than thirty days' notice of an intent to file such action.  Such notice shall be filed within one hundred and [sic] eighty days after the alleged unlawful practice occurred.

Stevens, 500 U.S. 6, 111 S.CT. at 1566, quoting 29 U.S.C. § 633a(d).[12]  Plaintiff has not come forward with evidence that he complied with this statute.  It is now too late to give notice to the EEOC within one hundred eighty days from the date that the promotion was denied to Plaintiff since that alleged discrimination happened in 1998.  Therefore, the age discrimination claim should be dismissed.

---

[12] A civil action by a federal employee bringing an ADEA claim then must be filed within the statute of limitations for a Title VII action, 42 U.S.C. § 2000e-16(c).  Edwards v. Shalala, 64 F.3d 601 (11th Cir. 1995).

**The merits of the Title VII race discrimination claim**

"A Title VII plaintiff may prove [his] case by direct or circumstantial evidence."

Combs v. Plantation Patterns, 106 F.3d 1519, 1527 (11th Cir. 1997), *cited in* Durley v.

APAC, Inc., 236 F.3d 651, 655 (11th Cir. 2000).

> Direct evidence of discrimination is "evidence which, if believed, would
> prove the existence of a fact [in issue] without inference or presumption."
> *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990)
> (citation and emphasis omitted). "[O]nly the most blatant remarks, whose
> intent could be nothing other than to discriminate on the basis of [race] ···
> constitute direct evidence of discrimination." *Damon v. Fleming
> Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir.1999) (citations
> omitted). "For statements of discriminatory intent to constitute direct
> evidence of discrimination, they must be made by a person involved in the
> challenged decision." *Trotter v. Bd. of Trustees*, 91 F.3d 1449, 1453-54
> (11th Cir.1996). "[R]emarks by non-decisionmakers or remarks unrelated
> to the decisionmaking process itself are not direct evidence of
> discrimination." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330
> (11th Cir.1998).

Bass v. Board of County Com'rs, Orange County, Fla., 256 F.3d 1095, 1105 (11th Cir.

2001). There is no direct evidence here of racial discrimination.

Where the claim is to be proved by circumstantial evidence, the analytical

framework established by the Supreme Court in McDonnell Douglas Corp. v. Green,

411 U.S. 792, 93 S.CT. 1817, 36 L.Ed.2d 668 (1973), and Texas Dep't of Community

Affairs v. Burdine, 450 U.S. 248, 101 S.CT. 1089, 67 L.Ed.2d 207 (1981), may be used.

Durley, 236 F.3d at 655. Under the McDonnell Douglas framework, Plaintiff bears the

initial burden of establishing a *prima facie* case of discrimination. McDonnell Douglas

Corp., 411 U.S. at 802, 93 S.CT. at 1824.

> In order to establish a prima facie case, and thus raise an inference of
> discriminatory intent, the plaintiff must demonstrate only that: (i) he or she
> belonged to a protected class; (ii) he or she was qualified for and applied
> for a position that the employer was seeking to fill; (iii) despite

qualifications, he or she was rejected; and (iv) the position was filled with an individual outside the protected class.

Vessels v. Atlanta Independent School System, 408 F.3d 763, 768 (11th Cir. 2005).

If Plaintiff establishes a *prima facie* case of discrimination, a presumption of unlawful discrimination arises.  Combs, 106 F.3d at 1528, *quoting* Burdine, 450 U.S. at 254, 101 S.CT. at 1094, as explained in Durley, 236 F.3d at 655-56.  "The burden then shifts to [Defendant] to provide a legitimate, non-discriminatory reason for its hiring decision."  236 F.3d at 656; *see also* Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc).  "If such a reason is articulated, the plaintiff then 'has the opportunity to discredit the defendant's proffered reasons for its decision.' "  Combs, 106 F.3d at 1528, *quoted in* Durley, 236 F.3d at 656.  However, "a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where . . . the reason is one that might motivate a reasonable employer."  Combs, 106 F.3d at 1543.

Here, it is undisputed that Plaintiff is a member of a protected class due to his race, that he was  qualified for the position for which he applied, that he was rejected for that position despite being qualified, and that the position was filled by someone outside of Plaintiff's class.  A *prima facie* case of discrimination exists on the evidence of record, as Defendant concedes.  Doc. 34, p. 8.

The EEOC findings of fact set forth a number of reasons that Tillman was selected instead of Plaintiff.  Tillman had more experience than Plaintiff as a police officer.  Doc. 34, Exhibit 10, p. 10.  While Plaintiff had years of experience as a guard or a security guard, that job was not converted to a police officer position until 1995.  See

footnote 6 above.  Thus, Tillman's military police experience provided him greater experience as a police officer.

It is also noted that Tillman completed 400 hours at the state police academy probably.  *Id*.  This was counterbalanced by the federal training and other law enforcement training that Plaintiff had.  Further, both Plaintiff and Tillman had state law enforcement certification.  *Id*.  However, Tillman graduated first in his class at the state police academy, a factor that weighed in Tillman's favor.  *Id*.  Though not mentioned in the EEOC findings of fact, Tillman also graduated with honors from the Military Police Academy.  Doc. 34, Exhibit 2b, p. 46.

It was also noted in the EEOC findings of fact that Tillman had supervisory police officer experience, having attained the rank of corporal in the military police, while Plaintiff had no supervisory experience.  Doc. 34, Exhibit 10, p. 11.  As noted above, this was only four months of supervisory experience.  It was further noted in the EEOC findings that Tillman was three months away from completing his Associate's degree in criminal justice.  *Id*., p. 11.

On the whole, therefore, though the qualifications of Plaintiff were good and could well have resulted in his selection for the promotion, Defendant has articulated legitimate, non-discriminatory reasons for decision to promote Tillman instead.  Plaintiff has not come forward to show that these reasons were a pretext to hide racial discrimination.  The issue is not the wisdom of Defendant's choice.[13]  Tillman had four

---

[13] "In a failure to promote case, a plaintiff cannot prove pretext by simply showing that she was better qualified than the individual who received the position that she wanted.  A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by sex [or race]."  Lee v. GTE Florida, Inc., 226 F.3d 1249, 1253 (11th Cir. 2000), *cert. denied* 532 U.S. 958 (2001).

months of supervisory police officer experience, several years more police officer experience than Plaintiff, graduated from the state police academy at the top of his class, and was close to completion of an Associates degree in criminal justice.  A reasonable employer might reasonably be motivated to promote Tillman instead of Plaintiff for those reasons.  Thus, summary judgment should be entered in Defendant's favor.

Accordingly, it is **RECOMMENDED** that Defendant's motion for summary judgment, doc. 34, be **GRANTED**, and the Clerk **DIRECTED** to enter judgment in Defendant's favor.

**IN CHAMBERS** at Tallahassee, Florida, on December 15, 2005.


**s/     William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**